IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFFREY D. ROBERTS,  )
        Plaintiff,  )
)
vs  )  Civil Action No. 15-489
)
NVR, INC., trading as RYAN HOMES,  )
        Defendant.  )

MEMORANDUM AND ORDER

Plaintiff, Jeffrey Roberts, brings this action against Defendant, NVR, Inc., trading as Ryan Homes, alleging state law claims of breach of contract, breach of warranty and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201.1 to 201.9.3 (UTPCPL), arising out of the allegedly defective construction of a home.

Presently pending before the Court is a partial motion to dismiss, in which Defendant contends that Counts II (breach of warranty) and Count III (UTPCPL) should be dismissed. For the reasons that follow, the motion will be denied.

Facts

On or about July 31, 2013, Plaintiff and NVR entered into a Purchase Agreement for a New Home to be constructed at 223 Taylor Ridge Lane, Mars, Pennsylvania 16046 ("the Home"). On or about February 14, 2014, the parties closed on the Home. At or prior to the closing, Plaintiff was provided with Ryan Homes' "Homeowners Documents" and "Homeowners Guide" which contain representations and warranties. (Am. Compl. ¶ 3 & Exs. 1-2.)[1] Immediately after closing on the Home, Plaintiff moved into the Home and continues to reside there. Since occupying the Home, Plaintiff has noticed numerous defects and deficiencies in its construction. He indicates that he informed NVR about these problems and that it

---

[1] ECF No. 6.

promised to repair some items and affirmatively indicated that it would not fix certain defects in the walls of the Home. It has not repaired all of the items that it agreed to repair and the Home has cosmetic and possibly structural damage. (Am. Compl. ¶¶ 4-8.)

Plaintiff states that, at all relevant times, NVR was responsible for and controlled the means and methods of the construction and the repairs to the Home, that its efforts to repair the construction defects have exacerbated the defective conditions or created additional defective conditions, and that the defective construction and observable construction defects will result in significant cost to repair and has resulted in diminished value of the Home. (Am. Compl. ¶¶ 9-11.)

Procedural History

On March 19, 2015, Plaintiff filed this action in the Court of Common Pleas of Allegheny County, Pennsylvania. Count I alleged a claim of negligence. Count II alleged a claim of breach of warranty. Count III alleged a claim under the UTPCPL. Count IV alleged a claim of breach of contract.

On April 13, 2015, Defendant removed the action to this Court on the basis of diversity jurisdiction in that: Plaintiff is a citizen of Pennsylvania, NVR is a Virginia corporation with its principal place of business in Reston, Virginia and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. (Notice of Removal ¶¶ 4-7.)[2] 28 U.S.C. § 1332(a).

On April 17, 2015, Defendant filed a partial motion to dismiss, seeking dismissal of Counts I, II and III (ECF No. 3). On May 7, 2015, Plaintiff filed an Amended Complaint. The negligence claim was deleted and the other claims were reordered as follows: Count I alleges breach of contract, Count II alleges breach of warranty and Count III is asserted under the

---

[2] ECF No. 1.

UTPCPL.

On May 15, 2015, Defendant filed a partial motion to dismiss, seeking dismissal of Counts II and III of the Amended Complaint (ECF No. 11). On June 4, 2015, Plaintiff filed a brief in opposition (ECF No. 14). Defendant filed a reply brief on June 9, 2015 (ECF No. 15).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded

3

components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

"Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (citation omitted). The Complaint attaches the Homeowners Guide and the warranties, both of which may be considered in reviewing the pending motion to dismiss.

Defendant argues that: 1) Count II should be dismissed because implied warranties have been disclaimed and he fails to identify any specific express warranty terms that have been breached; and 2) Count III should be dismissed on the grounds that it is barred by the economic loss doctrine and because Plaintiff has failed to plead justifiable reliance.

Plaintiff responds that: 1) he is not alleging a claim of breach of implied warranties and he has adequately pleaded a breach of express warranty claim; and 2) the UTPCPL claim is not barred by the economic loss doctrine, pursuant to a recent Pennsylvania Superior Court decision on the matter, and he has pleaded sufficient facts to infer that he reasonably relied on the written warranties in purchasing the Home to the extent that is necessary.

Breach of Warranty

In Count II, Plaintiff alleges that NVR breached express warranties regarding workmanship; he does not allege a claim of breach of implied warranties. Defendant argues that he has failed to identify any items from the limited warranty that were allegedly breached. Plaintiff responds that he has pleaded all of the elements necessary to state a claim.

To prove a claim of breach of express warranty under Pennsylvania law, a plaintiff must establish that: the defendant breached or failed to meet its warranty promise, that the breach was the proximate cause of the plaintiff's harm and the amount of ensuing damages. Samuel-Bassett

4

v. Kia Motors America, Inc., 34 A.3d 1, 35 (Pa. 2011).  Plaintiff argues that he has alleged that Defendant issued warranties on its workmanship, that the workmanship was substandard and it breached the warranties, that Defendant was notified and had an opportunity to cure, that it failed to correct the defects, and that the breach caused damages.  (Am. Compl. ¶¶ 5, 6, 7, 10, 11, 19, 20, 21, 22, 23 & Ex. 2.)  Specifically, he alleges that the warranties included workmanship and that the following areas would be constructed in a good and workmanlike manner: the sitework and surface and sub-surface drainage, the concrete for the basement and garage floors, wood and plastics including rough carpentry and trim carpentry, thermal and moisture protection, finishes including drywall (walls and ceilings) and painting, kitchen cabinets, vanities and countertops, plumbing and HVAC.  He contends that he is not required at this stage of the proceedings to cite verbatim the text of the warranty language from Defendant's 60 pages of warranties, and this Court agrees.

Defendant cites cases in which the plaintiffs provided no evidence of an express warranty.  Barker v. Hostetter, 2014 WL 1464319, at *26 (E.D. Pa. Apr. 15, 2014); Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 707 (D.N.J. 2011).  In this case, Plaintiff has referred to the warranty, which is attached to the Complaint, and cited specific examples of Defendant's failure to construct the Home in a good and workmanlike manner.  Plaintiff has pleaded all of the elements of a breach of express warranty claim.  Therefore, Defendant's motion to dismiss Count II will be denied.

Count III—UTPCPL Claim

In Count III, Plaintiff alleges a claim under the UTPCPL.  Defendant contends that this claim is barred by economic loss doctrine and that Plaintiff has failed to plead justifiable reliance.  Plaintiff argues that the doctrine does not apply to bar this statutory claim and that he

has pleaded all that is necessary at this stage of the proceedings.

  Determining State Law

  The Court of Appeals has stated that:

> In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. Kowalsky v. Long Beach Twp., 72 F.3d 385, 388 (3d Cir. 1995); McKenna v. Pacific Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994). In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule. McKenna, 32 F.3d at 825; Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991) (in predicting state law, we cannot disregard the decision of an intermediate appellate court unless we are convinced that the state's highest court would decide otherwise).

Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996). Because this is a diversity action, the Court must predict how the Pennsylvania Supreme Court would rule if presented with this situation. This is an issue of law to be resolved by the court. Bohler-Uddehom America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001).

  Economic Loss Doctrine

  The Pennsylvania Supreme Court recognizes that the "economic loss doctrine provides [that] no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Excavation Tech., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 841 n.3 (Pa. 2009) (quotation omitted). Pennsylvania has adopted the Restatement (Second) of Torts § 552 exception (when professionals provide false information for the guidance of others in a business transaction) with respect to an architect/contractor situation, Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005), but has refused to extend it to a utility company (sued by an excavator for economic damages when the utility erred in marking the locations of some gas lines), because

the utility company did not engage in supplying information to others for pecuniary gain. Excavation Tech., 985 A.2d at 843-44. See also Azur v. Chase Bank, USA, N.A., 601 F.3d 212, 223 (3d Cir. 2010) (credit card company not in the business of providing cardholder with information for pecuniary gain, so cardholder could not invoke § 552 exception).

However, claims asserted under the UTPCPL are not claims "in negligence." Rather, they are statutory claims. Thus, based upon the rulings of the Pennsylvania Supreme Court, the economic loss doctrine does not apply. Knight v. Springfield Hyundai, 81 A.3d 940, 952 (Pa. Super. 2013).[3] As Judge Wettick has explained:

> The economic loss doctrine is court-created. The Consumer Protection Law expresses the will of the Legislature. Unless constitutional issues are involved, case law may not interfere with legislation. See Seebold v. Prison Health Servs., Inc., 618 Pa. 632, 57 A.3d 1232, 1245 n. 19 (Pa. 2012) ("[i]t is the Legislature's chief function to set public policy and the courts' role to enforce that policy subject to constitutional limitations.") (quoting Program Admin. Servs., Inc. v. Dauphin County Gen. Auth., 593 Pa. 184, 928 A.2d 1013, 1017-18 (Pa. 2007)). Thus, the economic loss doctrine does not apply to private actions under the Consumer Protection Law.

Toth v. Northwest Sav. Bank, 2013 WL 8538695, at *4 (C.P. Allegheny Cty. Mar. 1, 2013) (footnote omitted). See also O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 275 (E.D. Pa. 2003) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing the spirit.") See 1 Pa. C.S. § 1921(b).

Defendant cites Werwinski v. Ford Motor Co., 286 F.3d 661, 680-81 (3d Cir. 2002), in which (given the absence of state law on the matter at the time) the Court of Appeals predicted that the Pennsylvania Supreme Court would find UTPCPL claims barred by the economic loss doctrine. However, as another court has explained:

---

[3] Defendant argues that the portion of the court's opinion in Knight pertaining to the UTPCPL is dicta because the court did not need to reach it. Nevertheless, the court did reach the issue and it is not dicta.

7

Werwinski no longer has any vitality. When it was decided, there was no guidance from Pennsylvania courts, leading the Third Circuit to predict how Pennsylvania's highest court would rule. Werwinski, 286 F.3d at 675. The Pennsylvania courts, the highest court and the intermediate appellate courts, had not yet addressed the issue. Since Werwinski issued, the Pennsylvania courts have spoken. They have held that the economic loss doctrine does not apply to UTPCPL claims.

A predictive ruling by the Third Circuit is generally binding on the district court. However, when the Pennsylvania intermediate appellate courts have ruled to the contrary and their decisions have not been overruled by the state's highest court, we are no longer compelled to follow the Third Circuit's prediction. See Aceto v. Zurich Ins. Co., 440 F.2d 1320, 1322 (3d Cir. 1971) ("No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Pennsylvania Supreme Court has not ruled upon that legal question."). It is state law, not federal law, we must follow….

In Knight, the Superior Court started its analysis quoting the Pennsylvania Supreme Court's definition of the economic loss doctrine, "no cause of action exists for **negligence** that results solely in economic damages unaccompanied by physical injury or property damage." 81 A.3d at 952 (quoting Excavation Technologies, Inc. v. Columbia Gas Co. of Pa., 604 Pa. 50, 985 A.2d 840, 841 (Pa. 2009)) (emphasis in original). Distinguishing statutory UTPCPL claims from negligence claims, the Knight court held that the economic loss doctrine did not apply to the UTPCPL claims brought by the buyer of a used car against the seller. Id.

The Superior Court's holding, unless and until it is overruled by the Pennsylvania Supreme Court, is the law of Pennsylvania. See Commonwealth v. Forbes, 867 A.2d 1268, 1279 (Pa. Super. 2005) (citation omitted). In the absence of guidance from the Pennsylvania Supreme Court, we look to decisions of the intermediate appellate courts for assistance in predicting how the Supreme Court would rule. Gares v. Willingboro Twp., 90 F.3d 720, 725 (3d Cir. 1996) (citation omitted). Indeed, rulings of the intermediate appellate courts are "accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise." U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996) (citation omitted). Indeed, under the Pennsylvania scheme, Pennsylvania lower courts must follow the precedential rulings of the Superior Court. See Benson ex rel. Patterson v. Patterson, 782 A.2d 553, 555-56 (Pa. Super. 2001). Thus, the Knight holding is binding Pennsylvania law.

Kantor v. Hiko Energy, LLC, 2015 WL 1650049, at *3-4 (E.D. Pa. Apr. 14, 2015).

In a reply brief, Defendant cites some district court cases that indicate that, although they question the reasoning of Werwinski, they are nevertheless "bound" by it. See DeFebo v. Andersen Windows, Inc., 654 F. Supp. 2d 285, 294 (E.D. Pa. 2009); Martin v. Ford Motor Co., 765 F. Supp. 2d 673, 685 n.8 (E.D. Pa. 2011).

These cases are not persuasive for several reasons. First, to conclude that a federal district court is "bound" by a prediction from its court of appeals regarding what a state supreme court would hold when state intermediate appellate courts have explicitly held to the contrary subverts the whole endeavor of predicting state law, including the procedure cited above. As noted above, intermediate appellate state court decisions are the first source to be consulted when the state supreme court has not spoken on a topic. Gares, 90 F.3d at 725. However, when the intermediate appellate courts and district court opinions interpreting state law provide little guidance, the court should proceed as follows:

> In predicting how a matter would be decided under state law we examine: (1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issues we face here.

Hughes v. Long, 242 F.3d 121, 128 (3d Cir. 2001). There is no basis for adopting a different procedure when the court of appeals has made a prediction about an issue of state law.

Moreover, following Defendant's argument, this Court would be bound by Werwinski's prediction even if the Pennsylvania Supreme Court itself held to the contrary, unless and until the Court of Appeals acknowledged the change in the law. After all, if this Court is "bound" by a holding of the Court of Appeals, then it cannot look outside that holding. Or suppose the Court of Appeals made a prediction (X), then the Pennsylvania Superior Court came out the opposite way (Y), and then the Court of Appeals (in a subsequent panel, but not an en banc decision)

9

predicted that the Pennsylvania Supreme Court would adopt Y. Would this Court be "bound" by the Third Circuit's first decision (X) based on the rule that the court must follow the earlier of two conflicting decisions? United States v. Tann, 577 F.3d 533, 541 (3d Cir. 2009).

The answer is no. The flaw in this reasoning is the application of the rule for the Third Circuit's decisions regarding <u>federal</u> law to a case in which it predicts what the Pennsylvania Supreme Court would decide with respect to a state law issue. Every time an issue of state law arises, this Court must address the same question (predicting what the Pennsylvania Supreme Court would do), canvassing the legal landscape which now (in this area) includes both a prediction from the Court of Appeals and a definitive holding to the contrary by the Superior Court. Even if Knight did not represent indicia of what the Pennsylvania Supreme Court might decide, there is no reason to believe that the court would follow Werwinski.

In addition, a number of the cases cited by Defendant predate or do not acknowledge the Knight case. See Tubman v. USAA Casualty Ins. Co., 943 F. Supp. 2d 535, 530-31 (E.D. Pa. 2013); Wulf v. Bank of America, N.A., 798 F. Supp. 2d 586, 595-96 (E.D. Pa. 2011); Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 550 (D. Md. 2011). This Court's research reveals that, of the seven cases to address the issue since Knight was decided: three of them felt "bound" to follow Werwinski, Vaughan v. State Farm Fire & Casualty Co., 2014 WL 6865896, at *4 & n.6 (E.D. Pa. Dec. 3, 2014); Pesotine v. Liberty Mut. Group, Inc., 2014 WL 4215535, at *3-4 (M.D. Pa. Aug. 25, 2014); Gadley v. Ellis, 2014 WL 3696209, at *4-5 (W.D. Pa. July 23, 2014);[4] two of them distinguished Werwinski, Hoffman v. Wells Fargo Bank, NA, 2014 WL 6822359, at *5

---

[4] Judge Gibson subsequently vacated in part his opinion in Gadley when the plaintiff, on a motion for reconsideration, presented evidence that damages occurred to his home, which constituted "other property" because the contract was only for panels of the roof, and thus the court concluded that the UTPCPL claim was not barred by the economic loss doctrine. 2015 WL 2345619 (W.D. Pa. May 15, 2015).

(E.D. Pa. Dec. 4, 2014); Abraham v. Ocwen Loan Servicing, LLC, 2014 WL 5795600, at *7 (E.D. Pa. Nov. 7, 2014); Kantor did not follow Werwinski because of Knight; and one noted that since the case law is in flux, the law should be construed in a manner to favor the plaintiff, Horne v. Progressive Advanced Ins. Co., 2015 WL 1875970, at *1 n.1 (E.D. Pa. Apr. 24, 2015). In other words, four of the seven cases did not feel bound by Werwinski.

However, none of the cases cited, including the three in which the courts concluded that they were "bound" to follow Werwinski, discussed the additional factor that occurs in a removal situation. That is, even if this matter were as undecided as Defendant contends, Plaintiff filed this case in state court, where Knight would govern. See Benson ex rel. Patterson v. Patterson, 782 A.2d 553, 555-56 (Pa. Super. 2001) (Pennsylvania lower courts must follow the precedential rulings of the Superior Court). To allow Defendant to remove the action to this Court and then argue for application of Werwinski "encourages outcome-determinative forum shopping—one of the evils that Erie [R. Co. v. Tompkins, 304 U.S. 64 (1938)] aimed to eliminate." AIU Insurance Co. v. TIG Insurance Co., 934 F. Supp. 2d 594, 606 (S.D.N.Y. 2013).

For all of these reasons, this Court concludes that is not "bound" by the prediction made by the Court of Appeals in Werwinski, that Knight represents a clear indication of what the Pennsylvania Supreme Court would hold if presented with the issue and that UTPCPL claims are not barred by the economic loss doctrine. Defendant's arguments are rejected.

Justifiable Reliance

Defendant also argues that Plaintiff has failed to plead facts showing that he justifiably relied on any alleged wrongful conduct by NVR to his detriment. Plaintiff replies that he has pleaded sufficient facts from which justifiable reliance can be inferred, or that such an element does not apply in this type of situation.

11

The Pennsylvania Supreme Court has held that "justifiable reliance is an element of … claims … brought under the Consumer Protection Law." Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 201 (Pa. 2007). In that case, the court held that a policyholder who alleged that an insurance agent made misrepresentations about the amount of a policy could maintain a UTPCPL claim despite the fact that she later received an integrated policy which contained accurate information because the jury would have to decide whether she reasonably relied on the agent's misrepresentations.

The UTPCPL applies when a defendant fails to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made. 73 P.S. § 201-2(4)(xiv). It also applies when a defendant makes repairs, improvements or replacements on tangible, real or personal property, or a nature or quality inferior to or below the standard of that agreed to in writing. 73 P.S. § 201-2(4)(xvi).

Defendant cites Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004), in which the court held that the plaintiffs could not have relied upon representations made in a brochure that were superseded by a written, fully integrated contract which disclaimed reliance on the brochure. Here, however, the warranties were issued in connection with the sale of the Home, not prior to it in a document that was later disclaimed or superseded and this is not a class action.

Moreover, as Plaintiff argues, the damages in this case would result from Defendant's failures to remedy defective work, thereby causing damages, and no purpose would be served by requiring the kind of reliance element that Defendant advocates. See Toth, 2013 WL 8538695, at *4, 9.

Therefore, Defendant's motion to dismiss Count III of the Amended Complaint will be

12

denied.

An appropriate order follows.

ORDER

AND NOW, this 15th day of June, 2015, for the reasons cited above,

IT IS HEREBY ORDERED that the partial motion to dismiss Counts II and III of the Amended Complaint filed by Defendant NVR, Inc., trading as Ryan Homes (ECF No. 11) is denied.

IT IS FURTHER ORDERED that Defendant file an answer to the Amended Complaint by June 29, 2015.

                                                                                  s/Robert C. Mitchell_____
                                                                                   ROBERT C. MITCHELL
                                                                                  United States Magistrate Judge